No. 99-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 48

298 Mont. 292

995 P. 2d 460

THOMAS MILFRED PABLO and CLIFFORD DURAN,

Plaintiffs and Respondents,

v.

SCOTT ALLEN MOORE, GABE LORENTZ, K.G. PAVING, INC.,

a Montana corporation; and ROD TINSETH & ASSOCIATES, an

assumed business name for a Montana business entity, and FIRST

FINANCIAL INSURANCE COMPANY, a foreign corporation,

Defendants and Appellants.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

THOMAS MILFRED PABLO, LYNN PABLO and CLIFFORD DURAN,

Plaintiffs,

v.

THE STATE OF MONTANA,

Defendant and Third-Party Plaintiff,

v.

SCOTT ALLEN MOORE, K.G. PAVING, INC., a Montana corporation,

and K. G. CONTRACTING, INC., a Montana corporation,

Defendants and Third-Party Defendants.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

Honorable C. B. McNeil, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Kimberly L. Towe, Browning, Kaleczyc, Berry & Hoven, Helena, Montana

For Respondents:

James A. Manley, Law Offices of Manley & O'Rourke-Mullins,

Polson, Montana

Ann Brodsky, Special Assistant Attorney General, Helena, Montana

Dana Christensen, Christensen, Moore, Cockrell & Cummings,

Kalispell, Montana

F. Lloyd Ingraham, Ingraham Law Firm, Ronan, Montana

Daniel W. Hileman and Shelly F. Brander, Kaufman, Vidal &

Hileman, Kalispell, Montana

Gary Kalkstein, Axelberg & Kalkstein, Missoula, Montana

Jack Jenks, Phillips & Boyer, P.C., Missoula, Montana

Submitted on Briefs: January 6, 2000

Decided: February 24, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1. The Twentieth Judicial District Court, Lake County, entered summary judgment in favor of the plaintiffs, Thomas and Lynn Pablo and Clifford Duran, concluding that K.G. Paving, Inc.'s, general commercial liability insurance policy with First Financial Insurance Company provided coverage for the plaintiffs' injuries sustained in a motor vehicle accident. We affirm.

¶2. The issue is whether the District Court erred in granting summary judgment to the plaintiffs on the coverage issue.

¶3. This case arose out of a September 12, 1996 motor vehicle accident on U.S. Highway 93 in Pablo, Montana. The accident occurred when a truck driven by Scott Allen Moore struck the rear end of an automobile which Thomas Milfred Pablo was driving and in which Lynn Pablo was a passenger. The impact forced the Pablo vehicle into an oncoming vehicle driven by Clifford Duran.

¶4. At the time of the accident, Moore was transporting a landscaping tractor for his employer, K.G. Paving, Inc., a Montana corporation. Gabe Lorentz was the principal owner and operator of K.G. Paving. Lorentz and K.G. Paving were covered by a First Financial Insurance Company commercial general liability insurance policy which provided liability insurance for negligent acts of the corporation or its employees, including Lorentz. The policy was purchased through Rod Tinseth & Associates.

¶5. The Pablos and Duran filed complaints, which were joined in District Court, alleging that they sustained serious injuries in the accident. They allege that Lorentz was negligent

in his hiring, training, and supervision of Moore. The plaintiffs also allege that Lorentz negligently failed to warn of a known danger, in that Lorentz drove past the accident site approximately ten minutes before the accident and saw a large cloud of dust created by a State of Montana highway broom truck which obscured visibility on the road. The plaintiffs allege that Lorentz was negligent in failing to use his cellular phone to notify his employee, Moore, of the hazardous road condition ahead. The plaintiffs have further alleged that Lorentz and K.G. Paving are liable for damages under a theory of respondeat superior.

¶6.The First Financial insurance policy provides, in relevant part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right to defend against "suit" seeking damages.

First Financial conceded that the claim arose during the policy period and fell within the definitions of bodily injury and occurrence. Therefore, the policy would provide coverage for Lorentz and K.G. Paving unless coverage is denied by an exclusion.

¶7.The insurance policy excludes coverage for:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

The policy further excludes coverage for:

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured[.]

The term "arising out of" is not defined in the policy.

¶8.The plaintiffs moved for summary judgment that the First Financial insurance policy provides coverage for Lorentz and K.G. Paving on their negligence claims. They argued that Lorentz's negligent hiring, training, supervision, and his negligent failure to warn did not "arise out of" the ownership, maintenance, use or entrustment of an auto. In the

alternative, they argued that the term "arising out of" is ambiguous and must be construed in their favor.

¶9.First Financial cross-moved for summary judgment, contending that the policy of insurance is a general commercial liability policy, not an automobile liability policy, and was not intended to cover the plaintiffs' injuries sustained in a motor vehicle accident. It argued that coverage was excluded under both the exclusion for damages arising out of the use of an automobile and the exclusion for damages arising out of the transportation of mobile equipment.

¶10.The District Court ruled that the term "arising out of" is ambiguous. Construing the instrument against the drafter-insurer, the court then ruled that coverage for this accident is not excluded under the above policy language. The court certified its partial summary judgment as final for purposes of appeal pursuant to Rule 54(b), M.R.Civ.P.

## Standard of Review

¶11.This Court reviews an appeal from summary judgment *de novo*, based on the same criteria applied by the district court. *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 7, 291 Mont. 189, ¶ 7, 967 P.2d 393, ¶ 7. Under Rule 56(c), M.R.Civ.P., if there are no genuine issues of material fact, then summary judgment is proper if the moving party is entitled to a judgment as a matter of law.

¶12.The interpretation of an insurance contract is a question of law. *Wellcome v. Home Ins. Co.* (1993), 257 Mont. 354, 356, 849 P.2d 190, 192. This Court reviews a conclusion of law to determine whether it is correct. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

## Discussion

¶13.Did the District Court err in granting summary judgment to the plaintiffs on the coverage issue?

¶14.On appeal, First Financial first argues that its insurance policy is not ambiguous and that it clearly excludes coverage for this accident under both the "auto" exclusion and the "transport of mobile equipment" exclusion. This hinges upon whether the phrase "arising out of," as used in both exclusions is ambiguous. The District Court characterized this as a

question of first impression in Montana.

¶15. In that regard, we note that this Court has recently declared that the phrase "arising out of the use" is ambiguous in another insurance context. In *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, 293 Mont. 140, 974 P.2d 623, this Court construed the phrase "arising out of the use" in an uninsured motorist benefit provision of an automobile liability insurance policy. The Court ruled that the phrase, which was not defined in the policy, was ambiguous because it is reasonably subject to more than one interpretation. *Wendell*, at ¶ 53. The Court also stated that a split of authority from courts attempting to construe a phrase demonstrates that the phrase has more than one reasonable interpretation. *Wendell*, at ¶ 29.

¶16. A similar rationale may be applied to the words "arising out of" as used in both exclusionary clauses at issue in the present case. As the District Court stated, "First Financial, having declined to define the term, is not well-positioned to argue that the term is only capable of the one interpretation suggested by First Financial." The phrase is reasonably subject to more than one interpretation. This is also demonstrated by the split of authority, described in the parties' briefs and the District Court's findings, conclusions, and order, on the meaning of the words "arising out of" in exclusionary clauses relating to the use of motor vehicles. We conclude that, like in *Wendell*, the phrase "arising out of" as used but not defined in the First Financial insurance policy, is ambiguous.

¶17. In interpreting an ambiguous clause, we are guided by general principles regarding contract law as applied to insurance contracts. If the terms of an insurance policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail, particularly if an ambiguous provision attempts to exclude the liability of the insurer. *Head v. Central Reserve Life of N. Am. Ins. Co.* (1993), 256 Mont. 188, 200, 845 P.2d 735, 742.

¶18. In *Wendell*, the Court adopted an expansive fact-intensive test to determine whether an accident "arose out of the use" of a vehicle for purposes of uninsured motorist insurance coverage. The Court then remanded for a factual determination of whether the appellant's injuries "originated from, or grew out of, or flowed from the use of [the] vehicle." *Wendell*, at ¶ 58. The expansive test was justified because it effected the remedial purposes of uninsured motorist coverage. *Wendell*, at ¶ 54. In the present case, however, that justification for a broad interpretation of the clause is not present-in fact, here, the plaintiffs benefit from a narrow interpretation of the clause, since it determines

the extent to which insurance coverage is excluded.

¶19.First Financial argues that even if this Court concludes that the insurance policy is ambiguous, the Court should look to the predominate factual cause of the injuries to determine whether the policy exclusions apply. First Financial cites the majority rule as expressed in *Oakley Transport, Inc. v. Zurich Ins. Co.* (Ill. App. Ct. 1995), 648 N.E.2d 1099. In that case, the plaintiffs filed a complaint for declaratory judgment against the commercial general insurer of a business whose employee had driven a truck off the road and into a number of houses. The plaintiffs alleged that the insurance policy covered their damages under their theories of negligent entrustment and negligent supervision, despite a policy provision excluding injury or damages "arising out of" the use of an auto.

¶20.The *Oakley* court ruled that the insurance policy was clear on its face in excluding claims for negligent entrustment. The court stated that the premium charged for standard commercial liability policies reflects the underwriting objective of placing auto accidents beyond the scope of such coverage. *Oakley*, 648 N.E.2d at 1107. In relation to the issue remaining in the present case, the court then went on to rule that the commonly understood meaning of the term "arising out of" the use of an auto precluded not only coverage for a direct claim of an employee's negligent driving of a motor vehicle, but also coverage for negligent supervision. *Oakley*, 648 N.E.2d at 1107. The court reasoned that negligent supervision "also 'arises' out of the employee's 'use' of the vehicle because the negligent supervision is derivative of, and dependent upon, the underlying negligent use of the vehicle." *Oakley*, 648 N.E.2d at 1107.

¶21.First Financial contends that interpreting exclusions according to a tort theory of liability as opposed to the factual cause of injuries is contrary to Montana's policy of interpreting insurance policies in accordance with reasonable consumer expectations. It also points out that this Court has expressly stated that "[c]ontract law conditions [an insurer's] obligation under the insurance contract, not tort law." *State Farm Mut. Auto. Ins. Co. v. Estate of Braun* (1990), 243 Mont. 125, 129, 793 P.2d 253, 255. First Financial further asserts that requiring insurers to list all possible theories of tort liability which are excluded under exclusionary clauses is in fact an impossible requirement, given that new theories of tort liability are adopted as the law develops.

¶22.First Financial's approach, however, effectively resolves ambiguity in favor of the insurer which drafted the language and failed to define the term. Such a result is inconsistent with the general rules in Montana on interpretation of ambiguities in

insurance contracts.

¶23.In looking at the cases from other jurisdictions dealing with the use of the phrase "arising out of" in exclusionary clauses for use of a motor vehicle, the District Court adopted the minority rule as expressed in *Marquis v. State Farm Fire and Cas. Co.* (Kan. 1998), 961 P.2d 1213. There, the plaintiff brought suit against an insurance provider for the employer of the driver who had allegedly caused the plaintiff's injuries in a motor vehicle accident. The court repeated a prior holding that unlike other states, Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability." *Marquis*, 961 P.2d at 1223, citing *Catholic Diocese of Dodge City v. Raymer* (Kan. 1992), 840 P.2d 456, 461. In interpreting the contractor's insurance policy which excluded claims "arising out of" the use of a motor vehicle, but which did not clearly and unambiguously exclude claims for negligent supervision, hiring, or retention of an at-fault driver, the Kansas court stated:

Where a policy seeks to exclude coverage for an accident arising out of the use of an automobile, coverage will still be found if the theory of liability establishes negligence independent of the use of the automobile, which negligence is covered under the policy.

*Marquis, 961 P.2d at 1221. The plaintiff's theories of liability in Marquis included a claim for negligent hiring, retention, and supervision of the employee driver allegedly at fault. The court affirmed summary judgment that coverage was owed on the plaintiff's claim for negligent supervision. Marquis, 961 P.2d at 1223.*

¶24.Like the insurance policy in *Marquis*, the First Financial policy in the present case does not clearly and unambiguously exclude coverage for the theories of liability pled by the plaintiffs. Negligent hiring, training, and supervision and negligent failure to warn are not clearly and unambiguously excluded from coverage under the First Financial policy.

¶25.Having declared the phrase ambiguous, we must give it the construction most favorable to the insured or other beneficiary. We conclude that the exclusionary clauses of the First Financial insurance policy do not exclude damages for negligent hiring, training, and supervision and negligent failure to warn. We therefore affirm the summary judgment entered by the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART